IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LONNIE BREEZEE,

                                                     OPINION AND ORDER

                 Plaintiff,

                                                     14-cv-458-bbc

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Lonnie Breezee is seeking judicial review of the adverse decision of the administrative law judge who made the final decision for defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits. He contends that the administrative law judge erred in three respects: (1) he failed to afford sufficient weight to the opinion of the consultative examiner; (2) he did not question the vocational expert about how his testimony corresponded to information in the Dictionary of Occupational Titles, known as the DOT, and its companion volume, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, known as the SCO; and (3) he found moderate limitations in plaintiff's concentration, persistence and pace but erred when he translated those limitations into "the ability to perform simple, routine work" in his questions to the vocational expert.

      The record supports plaintiff's contentions. The administrative law judge did not give

1

a persuasive explanation for his decision to give more weight to the opinion of a non-examining source, an agency psychologist, than to the opinion of an examining psychologist. The vocational expert's testimony was not fully consistent with the DOT or SCO and the administrative law judge failed to require the expert to explain the inconsistencies. Finally, the administrative law judge erred in conflating "limitations in concentration, persistence and pace" with "the ability to perform simple, routine work." Accordingly, the case must be remanded to defendant.

RECORD FACTS

Lonnie Breezee was born on July 31, 1963, and was 45 in 2008, when he claims to have become disabled. He speaks English, but is illiterate, although he does have a driver's license. He has significant mental limitations, as well as physical problems (degenerative disc disease with lumbar radiculopathy, fibromyalgia, obesity, carpal tunnel syndrome and possible macular degeneration). In addition to cognitive impairments, he has affective disorder and anxiety impairment. His work history is spotty: his earnings records indicate that only once since 1989 has he been able to earn above substantial gainful activity levels for an entire year.

In connection with his application for benefits, plaintiff was sent to Dr. Richard Hurlbut for a consultative psychological examination. Hurlbut undertook a mental status evaluation and administered two tests, including the Wechsler Adult Intelligence Scale. Plaintiff scored 79 on the IQ test (within the borderline range for intelligence); his verbal

comprehension score was 83 (low average range); his perceptual reasoning score was 94 (average range); and his processing speed was 81 (low average range). His composite score summary for working memory was 69 (extremely low range). Overall, his test scores ranged from extremely low to low average. AR 393. He performed at a level between kindergarten and the beginning of first grade, which indicated a significant deficit in academic achievement and literacy. In filling out the multi-axial system in DSM-IV (Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. 1994), Hurlbut assessed plaintiff as having depressive disorder, not otherwise specified, and a learning disability (Axis I), borderline cognitive functioning and illiteracy (Axis II). He identified plaintiff's medical problems, which included a degenerative disc, constant aching pain, possible fibromyalgia and macular degeneration (Axis III); assessed the major psychosocial stressors plaintiff had suffered recently as ("mild-to-moderate, financial, cannot work") (Axis IV); and estimated plaintiff's global assessment of functioning score as 50 (Axis V). AR 396. Hurlbut added that if plaintiff were found eligible for benefits, he would need a payee because he would not be able to manage independently. Id. In terms of work capacity, Hurlbut found that plaintiff "would have some problems with even simple instructions" and that he "would probably get along well with supervisors and coworkers but would have difficulty with concentration, attention and work pace." AR 395.

A state agency psychologist, Dr. Esther Lefevre, agreed with Hurlbut that plaintiff was moderately limited in maintaining concentration, persistence and pace, AR 416, specifically in the ability to carry out very short and simple instructions and to make simple, work-

3

related decisions. AR 420. She noted plaintiff's diagnosis of a depressive disorder, his learning disability, borderline intellectual functioning and functional illiteracy, but concluded nevertheless that he was capable of the basic mental demands of unskilled work. AR 422. Moreover, she did not think that his cognitive impairments limited him in his daily activities or maintaining social functioning. AR 416.

The administrative law judge gave "great weight" to Dr. Lefevre's opinion that plaintiff remained capable of meeting the basic demands of unskilled work, AR 19, and only "some weight" to Hurlbut's opinions, AR 20, although he found Hurlbut's conclusions supported "by the objective findings and subjective information elicited during the consultative exam and not inconsistent with the residual functional capacity." Id. His only explanation for giving more weight to Lefevre's conclusions was that Hurlbut had seen plaintiff only once; he did not acknowledge that Lefevre had never seen plaintiff. He found that plaintiff had not engaged in substantial gainful work activity since the alleged onset of his disability, that he had degenerative disc disease with lumbar radiculopathy, obesity, fibromyalgia, carpal tunnel syndrome, affective disorder, anxiety disorder and cognitive impairment. AR 13. He concluded that none of these impairments met the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 414.926), whether considered separately or in combination. AR 14.

When it came to "concentration, persistence and pace," the administrative law judge was not persuaded that plaintiff had any more than a moderate limitation in this area.

Plaintiff had been able to maintain part-time employment for many years before the alleged onset of his disability, as well as since then; he had participated in little mental health treatment; he did not follow through with referrals to the Literacy Council to improve his reading and academic skills; and no "treating or examining source has documented any significant deficits with regard to the claimant's ability to maintain concentration, persistence, and pace during appointments." AR 15.

The administrative law judge concluded that plaintiff had the residual functional capacity to perform light work with only occasional climbing of ladders, ropes, etc., no more than frequent balancing, stooping, crouching, kneeling or crawling or bilateral handling or fingering, with the additional limitation that he could do only simple, routine, repetitive tasks in a low stress job, which the administrative law judge defined as one with only occasional decision making and only occasional changes in the work setting, no production rate or pace work, such as assembly line work, but "allowing goal-oriented work that can be checked at the end of the work period." AR 16-17.

At the administrative hearing, the vocational expert testified that he had listened to plaintiff's testimony at the administrative hearing and had reviewed the file regarding plaintiff's work history. He was not asked whether he was familiar with plaintiff's physical or mental conditions. He was asked whether a person of plaintiff's age, education and work experience with the limitations set out in the preceding paragraph would be able to perform any past jobs as plaintiff had performed them or as they are customarily performed. AR 77-78. The expert testified that an individual with the same limitations could perform the jobs

5

of janitor, DOT number 323.687-014, (18,240 employed in Wisconsin); street cleaner, DOT number 955.687-018 (43,100 employed); and bagger in the garment industry DOT number 920.687-018 (3,470 employed).

In his written decision, the administrative law judge found that plaintiff had the residual functional capacity to do light work, as the judge had defined it for the vocational expert and that plaintiff had the medical impairments to which he had testified (back problems, fibromyalgia and carpal tunnel syndrome, as well as obesity). He found that these impairments could reasonably cause the alleged symptoms, but that plaintiff was not entirely credible about the intensity, persistence and limiting effects of the symptoms. AR19. He found the agency's medical sources more believable when they said that plaintiff remained capable of performing a full range of light work, particularly in light of plaintiff's ability to perform daily activities, the lack of care or treatment plaintiff had sought for his pain in the year preceding the hearing and the absence of any medical opinion that plaintiff had specific work-related limitations or that he could not work. Id.

OPINION

A. Failure to Give Sufficient Weight to Opinion of Consulting Examiner

Plaintiff's first objection is to the difference in weight that the administrative law judge gave to the opinions of the consulting psychologist, Dr. Hurlbut, and to the opinions of the agency psychologist, Dr. Lefevre. The administrative law judge's explanation on this subject is opaque. He never explained why he was treating the opinions differently, what

6

difference it made to his conclusion or why he was not following 20 C.F.R. § 404. 1527(c) (explaining that agency generally gives more weight to opinion of source who has examined claimant than to one who has not).  He did note that Hurlbut had had only one session with plaintiff, but failed to acknowledge that, as an agency psychologist, Lefevre would have had *no* personal contact with plaintiff.

More important, the administrative law judge failed to discuss Hurlbut's finding that plaintiff would have "some problems with even simple instructions."  As plaintiff's cousnel points out, a substantial loss of ability to understand, carry out and remember simple instructions "would severely limit the potential occupational base."  SSR 85-15.  See also SSR 96-9p (understanding, remembering and carrying out simple instructions is mental activity generally required to perform unskilled work).  I agree with plaintiff that the administrative law judge's conclusion on this point is not supported by substantial evidence and requires remand.

## B. Treatment of Vocational Expert's Testimony

The administrative law judge erred in relying on the vocational expert's testimony about the kinds and numbers of jobs that would be available for a person of plaintiff's abilities because the expert's testimony was not supported by the Dictionary of Occupational Titles or its companion, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.  His hypothetical question to the expert was whether a person of plaintiff's age, education and work experience could perform work limited to

simple, routine and repetitive tasks in a low-stress job defined as having only occasional decision making and only occasional changes in the work setting. AR 78-79. This question has several problems. The first one is that the limitations set out in the question are not included in either dictionary; therefore, the administrative law judge was required to ask the expert the basis for his opinion that the specific jobs to which he testified would accommodate a person with plaintiff's limitations.

The administrative law judge's failure to ask the proper questions was a violation of the Social Security Administration's policy interpretation ruling, SSR 00-4p, a ruling intended to clarify the agency's standards for the use of vocational experts who testify at administrative hearings. The ruling advises administrative law judges that they must identify and give a reasonable explanation for any conflicts between the occupational evidence provided by vocational experts and information in the DOC and SOC.

Counsel did not object to the question at the hearing. However, his failure to do so does not absolve the administrative law judge of responsibility for his failure to ask the vocational expert to explain why the work covered in the particular job could be performed by a person with plaintiff's limitations. Administrative law judges need not wait for objections. They are trained to recognize conflicts between the dictionaries and a vocational expert's testimony and are required to seek clarification when the error is so obvious that the judge should have noted it. Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (claimant's failure to raise possible violation of SSR 00-4p at administrative level does not forfeit claimant's right to argue later that violation occurred, so long as conflict was obvious

8

enough that administrative law judge should have picked up on it without assistance); Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006) ("ALJ must 'elicit a reasonable explanation for any discrepancy'") (quoting Haddock v. Apfel, 196 F.3d 1084, 1087 (7th Cir. 1999)). If a new hearing is held on remand, the administrative law judge should question the vocational expert more thoroughly about the kinds of jobs the expert thinks the plaintiff might be able to perform.

The questioning suffers from another problem, although it is not one raised by plaintiff. The Court of Appeals for the Seventh Circuit has held that the Dictionary "does not contain information on which to base an estimate of the number of available of jobs of a particular kind," Voigt v. Colvin, No. 14-2303 (7th Cir. Mar. 26, 2015); see also Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014) ("We have no idea what the source or accuracy [is] of the number of jobs that vocational experts . . . claim that plaintiff could perform that exist in plaintiff's area, the region, or the nation. There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy."). In this case, the administrative law judge did not question the vocational expert about the source of the job numbers he cited for the work he said plaintiff could perform. Neither did he raise any questions about whether the job of "street sweeper" is still performed by humans or primarily by motorized equipment for street cleaning. (The job is described as involving sweeping refuse and shoveling it into movable container pushed

9

from place to place.) For his part, the expert never identified how many of the 3470 jobs for baggers in the garment industry exist in northern Wisconsin, where plaintiff lives, or anywhere within the state.

### C. Concentration, Persistence and Pace

The Court of Appeals for the Seventh Circuit has held in a number of cases that "simple, routine work" is not synonymous with "concentration, persistence and pace" and that a hypothetical question confining a hypothetical worker to "routine, repetitive tasks with simple instructions" is not an adequate substitute for orienting the vocational expert to the totality of the claimant's limitations. O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010) ("[E]mploying terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace"); Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009) (hypothetical question to vocational expert must account for documented limitations of concentration, persistence or pace; Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider plaintiff's difficulties with memory, concentration or mood swings).

The failure to incorporate a claimant's limitations in a hypothetical question put to a vocational expert may require a remand for further proceedings, id., unless it is clear from the record that the vocational expert is familiar with all of the limitations by having learned of them independently from her review of the medical records or by being informed of them

by questioning at the hearing. Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002); see also Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004) (administrative law judge must provide "'an accurate and logical bridge' from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's findings and afford a claimant meaningful judicial review'") (quoting Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2007)). In this case, the record does not show that the vocational expert had reviewed plaintiff's medical record or that he was otherwise aware of Hurlbut's opinions following the consultative examination. For this reason as well, the case must be remanded to the commissioner.

## ORDER

IT IS ORDERED that plaintiff Lonnie Breezee's motion for summary judgment, dkt. #10, is GRANTED. The decision denying plaintiff benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g). The clerk of court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 3d day of April, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge